(No. 26334.—

GLORIA SCHWARTZ *et al.* Defendants in Error, *vs.* THE IN-
DUSTRIAL COMMISSION *et al.*—(HERLEE HOUSEHOLD
APPLIANCES, INC., Plaintiff in Error.)

*Opinion filed January 20, 1942—Rehearing denied March 11, 1942.*

Ross & BERCHAM, for plaintiff in error.

LOUIS N. BLUMENTHAL, and EDWARD M. PLATT, for defendants in error.

Mr. JUSTICE SMITH delivered the opinion of the court:

This is a writ of error granted by this court to review the judgment of the circuit court of Cook county. The case arises under the Workmen's Compensation act. It involves a claim for compensation on account of the death of Martin L. Schwartz. There is no material dispute as to the facts in this case. The claim was originally heard

by an arbitrator of the Industrial Commission. The arbitrator found that Martin L. Schwartz, the deceased employee, did not sustain accidental injuries arising out of and in the course of his employment, and that the injuries sustained by him which resulted in his death did not arise out of and in the course of his employment by plaintiff in error. On appeal, the Industrial Commission confirmed the decision of the arbitrator and ordered that such decision stand as the decision of the commission. Defendants in error removed the case to the circuit court of Cook county by *certiorari*. That court reversed the decision of the commission and entered judgment for an award in favor of defendants in error, Gloria Schwartz and Leona Schwartz, children of said deceased, in accordance with the provisions of the Workmen's Compensation act.

The case was heard before the arbitrator upon evidence submitted by defendants in error alone. No evidence was offered by plaintiff in error. No further evidence was offered by either party on the hearing before the Industrial Commission.

The evidence discloses that on June 12, 1937, and for some time prior thereto, plaintiff in error was engaged in the operation of a retail store. Martin L. Schwartz was employed in that business as a salesman. He also discharged some duties as manager, or assistant manager, of the store. He took care of orders, deposited money in the bank and otherwise handled the operation of the business, doing whatever was necessary in that respect. He also had some supervision over other employees and assisted them in closing sales whenever his help was needed. It was the custom to keep the store open on Saturdays until midnight. Deceased was on duty on Saturdays continuously from the time the store opened in the morning until it closed at night. Food was not served to the employees and no place was provided for them to either obtain or eat their meals. They were at liberty to go out for their meals.

Plaintiff in error had no control, and gave no instructions to the employees as to when or where they should obtain their meals or food, while on duty. They were at liberty to obtain their meals at any place of their own selection. When the deceased went out for lunch, or dinner, he would always leave word where he was going so he might be reached if his assistance was needed or his presence required at the store.

On June 12, 1937, he informed another salesman in the store that he was going to the Marquis restaurant, and stated that if he was needed for any help at the store they could reach him at that place. He left the store for that purpose, about 4:30 or 5:00 o'clock. His fiancee joined him at the store. They proceeded to the restaurant which was about one-half block distant from the store. He ate his meal and returned to the store about 5:30. Both he and his fiancee became ill, apparently from food poisoning. His fiancee ate a smaller portion of food and her illness soon subsided. The deceased, however, when he returned to the store was ill and looked pale. During the evening he showed considerable improvement. The following Monday he returned to the store but was still ill. The physician who attended him testified that he first saw the deceased on Tuesday, June 13, at the hospital; that he was in a condition of shock, and that it was impossible to make a diagnosis of his heart condition because of circulatory shock. He saw the deceased again on Thursday and his condition was improved. The following day, which was Friday, his condition was the same. He was found dead about 2:30 Saturday morning. The physician testified that the cause of death was circulatory failure and shock caused by acute gastroenteritis.

It was stipulated at the hearing before the arbitrator that both the employer and employee were under the Workmen's Compensation act and subject to its provisions. It was further stipulated that the only question involved was

whether the deceased sustained an accidental injury arising out of and in the course of his employment, and whether notice thereof was given.

The record shows that the employer had no control over the deceased as to where he should eat his meals, nor was he given any instructions as to where he should procure them. He was free to go to any place of his own choosing. No one told him when to go, where to go, or how to go. He paid for his own meals. They were not furnished by the employer.

The deceased left surviving defendants in error Gloria Schwartz and Leona Schwartz, his children. He was divorced from Rose Schwartz, his former wife, who was the mother of these children. The Industrial Commission having found that the deceased did not sustain accidental injuries arising out of and in the course of his employment by plaintiff in error, the question to be determined is whether or not the circuit court properly set aside the decision of the Industrial Commission and found that the deceased did sustain accidental injuries which arose out of and in the course of his employment, and in entering an award in favor of the surviving children of the deceased.

It is well settled that the courts may not, on review of an award made by the Industrial Commission, disturb factual determinations of that body, unless the decisions be manifestly against the weight of the evidence. (*Rosenfield* v. *Industrial Com.* 374 Ill. 176; *Rodriguez* v. *Industrial Com.* 371 id. 590; *Olympic Commissary Co.* v. *Industrial Com.* 371 id. 164; *Abell Chevrolet Co.* v. *Industrial Com.* 370 id. 460; *Green* v. *Industrial Com.* 337 id. 514; *Donk Bros. Coal & Coke Co.* v. *Industrial Com.* 325 id. 193.) The rule is likewise that the petitioner has the burden of establishing by clear and convincing evidence that the accidental injury arose out of and in the course of the employment. (*Rosenfield* v. *Industrial Com. supra; Boyer Chemical Co.* v. *Industrial Com.* 366 Ill. 635; *Mirific Prod-*

*ucts Co.* v. *Industrial Com.* 356 id. 645; *Harding* v. *Industrial Com.* 355 id. 139; *Jersey Ice Cream Co.* v. *Industrial Com.* 309 id. 187; *Mix Dairy Co.* v. *Industrial Com.* 308 id. 549.) An injury to be compensable must arise from a risk reasonably incidental to the employment and not one to which the public generally is subjected. A risk is incidental to the employment when it belongs to or is connected with what an employee has to do in fulfilling his contract of service. (*White Star Motor Coach Lines* v. *Industrial Com.* 336 Ill. 117; *Weis Paper Mill Co.* v. *Industrial Com.* 293 id. 284.) It is not sufficient that an accidental injury was received by an employee in the course of his employment but it must arise while he was acting within the duties of his employment or doing some act incidental thereto, and both elements must be present at the time of the injury in order to justify compensation. *Mazursky* v. *Industrial Com.* 364 Ill. 445.

In order for an accident to arise out of the employment it must be incidental to the performance of the contract of service and the origin or cause of the accident must belong to and be connected with the contract of service. (*Rainford* v. *Industrial Com.* 289 Ill. 427.) The Workmen's Compensation act does not apply to every accidental injury which may happen to an employee during his employment. It does not make the employer an insurer against all injury. The injury contemplated by the act must have its origin in some risk of the employment. (*Edelweiss Gardens* v. *Industrial Com.* 290 Ill. 459.) The employer is liable for compensation only for an injury which occurs to the employee while performing some act for the employer in the course of his employment, or incidental to it. (*Fairbank Co.* v. *Industrial Com.* 285 Ill. 11.) A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service. (*Boorde* v. *Industrial Com.* 310 Ill. 62.) A prerequisite to the right to compensation is that the accidental

injury must arise out of, as well as occur, in the course of the employment, and the mere fact that the duties take the employee to the place of the injury and that, but for the employment, he would not have been there, is not, of itself, sufficient to give rise to the right to compensation. There must be some causal relation between the employment and the injury and the causative danger must be peculiar to the work and not common to the neighborhood. *Great American Indemnity Co.* v. *Industrial Com.* 367 Ill. 241.

In order for an accidental injury to come within the Workmen's Compensation act it must be of such character that it may be seen to have had its origin in the nature of the employment or have been incidental to the employment, or it must have been the result of a risk to which, by reason of the employment, the injured employee was exposed to a greater degree than if he had not been so employed. It is not enough that the presence of the injured person at the place he was injured was due to his employment, if the injury is sustained by reason of some cause having no relation to the nature of the employment. *Sure Pure Ice Co.* v. *Industrial Com.* 320 Ill. 332.

One of the questions raised by plaintiff in error is that there was no competent proof in the record sufficient to show that the deceased did, in fact, ingest contaminated or poisonous food, and that his death was caused thereby. For the purpose of this opinion, however, it may be assumed that the deceased did partake of unwholesome food which resulted in his death. As we view this record, the more important question is whether the accidental ingestion of contaminated food constituted an accident arising out of and in the course of his employment.

The record shows conclusively that the deceased was permitted to select his own eating place. In this the employer attempted to exercise no control. It is also true that he had the right to choose his own time for his dinner hour and that his employment was not suspended during

that time. Under the rule frequently announced by this court, when deceased left his place of employment and went to the restaurant to obtain his meal his employment was not suspended or discontinued. He was still within the course of his employment. Under the facts shown we are of the opinion that the deceased, while in the restaurant for the purpose of obtaining his evening meal, was still within the scope and course of his employment. While on the mission of obtaining necessary food he was still engaged in the course of his employment. Assuming that he accidentally ingested contaminated and poisonous food at that time and place, this would constitute an accidental injury suffered in the course of his employment.

The question, however, of whether such accidental injury arose out of his employment presents a different proposition. Under the rules announced by the authorities above cited, it is not sufficient that the accidental injuries were suffered in the course of the employment, but it is also essential that they must arise out of the employment, or be incidental thereto.

It is insisted by counsel for defendants in error that the finding of the court that the accidental injuries arose out of the employment is justified by the evidence in the record. A careful examination of the record, however, fails to disclose any evidence which connects the accidental injuries claimed with the employment, within the rule above announced. There was no connection whatever between the employment of the deceased and the ingestion of the poisonous food, as contended. It is true that the facts in the record are sufficient to show that the deceased would likely not have been in the restaurant but for his employment. This is sufficient to discharge the burden cast upon defendants in error to show that the accidental injuries complained of occurred in the course of the employment. But this is not enough. There must be some causal relation between the employment and the injury and the causa-

tive danger must be peculiar to the work and not common to the neighborhood. Partaking of contaminated food in a nearby restaurant cannot be said to have any causal relation to the employment of the deceased in the retail store of plaintiff in error. The causative danger—the contaminated food—was not peculiar to the work or incidental to the employment because it did not belong to, nor was it in any way connected with, what the deceased had to do in fulfilling his contract of service. The origin or cause of the accident did not belong to and was not connected with the duties of the deceased under his contract of service.

Counsel for defendants in error have cited no case, and we have found none, under which it could be held that the injuries sustained by the deceased arose out of his employment. Many cases from foreign jurisdictions are cited by defendants in error. To analyze these cases and distinguish them from the case at bar would unduly extend this opinion and serve no useful purpose. In none of the cases cited do we find any factual situation similar to the case shown by this record. All of the cases cited are readily and easily distinguishable on the facts from the case here presented.

The decision of the Industrial Commission confirming and approving the decision of the arbitrator finding that the deceased did not sustain an accidental injury arising out of and in the course of his employment, was sustained, not only by a preponderance of the substantial evidence in the record, but by all of the evidence introduced. No other conclusion could have properly been reached. The circuit court erred in setting aside the decision of the commission and in entering an award against plaintiff in error.

The judgment of the circuit court is reversed and the decision of the Industrial Commission is confirmed.

*Judgment reversed; decision of Industrial*
*Commission confirmed.*