ILLINOIS BELL TELEPHONE COMPANY, Appellant and Cross-Appellee, v. THE INDUSTRIAL COMMISSION et al. (Mary Conoboy, Cross-Appellant and Appellee).

First District (Industrial Commission Division) No. 1—87—2373WC

Opinion filed July 20, 1988.—Rehearing denied September 23, 1988.

Kenneth N. Marshall, of Stevenson, Rusin & Friedman, Ltd., of Chicago, for appellant.

Terrance J. Van Driska, of Chicago, for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

The arbitrator found that the petitioner, Mary R. Conoboy, had injured her knee in the course of her employment. He awarded her 36 weeks of temporary total disability compensation (TTD), $3,735.85 in medical expenses and 80 weeks of compensation for the permanent partial loss of the use of 40% of her left leg. The Commission affirmed the arbitrator's decision. The circuit court modified the TTD award to 74/7 weeks and confirmed the remainder of the Commission's decision. The respondent appeals; the petitioner cross-appeals.

Having determined that the Commission erred in finding that the petitioner's injury arose out of and in the course of her employment, we will recite those facts necessary for understanding our decision. The petitioner testified before the arbitrator to the following. On March 15, 1980, she was employed by the respondent, Illinois Bell Telephone Company, at its Woodfield Mall Phone Center. At 5 p.m. the petitioner completed her workday, left the Phone Center on the second floor of the mall, and used the nearest escalator to descend to the first floor. At 5:03 p.m., as she walked toward a mall exit on the first floor, her left leg slid on the highly waxed, slippery tile floor, causing her to fall and injure her left knee.

The petitioner further testified that the area in which she fell was open to the public when the mall was open for business. According to the petitioner, the escalator she used was six feet from the Phone Center. The next closest one was a city block away. The petitioner could have used any of approximately 10 mall exits. In fact, while she worked at the Phone Center, she entered and exited the mall some 240 times, using a path taking her over the accident site only 20 times. The respondent had not designated a specific section for employee parking; employees had merely been instructed to use the outer lots circling the mall.

The petitioner placed in evidence before the arbitrator the respondent's lease agreement for its Woodfield Mall store. The lease showed that the area in which the petitioner was injured was a "common area" and provided that the landlord was responsible for the operation and maintenance of the common areas of the mall. The lease further provided that the landlord had sole discretion in operating and maintaining the common areas. Additionally, the lease stated that the respondent would indemnify the landlord for any liability arising from personal injury or property damage on the leased premises; it included no such provision for the common areas. The respondent was, however, required to pay a *pro rata* share of the expenses of maintaining the common areas.

The respondent argues on appeal that the circuit court erred in confirming the Commission's finding that the petitioner's injury arose out of and in the course of her employment. Specifically, the respondent contends that the petitioner's injury is not covered by the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*), because it occurred off the respondent's premises. The respondent contends that its premises, for purposes of liability under the Act, are limited to the space it leases. The common areas of the mall, states the respondent, are the sole responsibility and liability of the landlord.

■ In general, liability under the Act is limited to injuries occurring on the employer's immediate premises or where the injury occurs off the premises while the employee is engaged in a work-related activity. (*Reed v. Industrial Comm'n* (1976), 63 Ill. 2d 247, 347 N.E.2d 157.) There are, however, exceptions to this general rule. Compensation has been allowed where the injury occurred in a public area extremely close to the employer's premises (*Deal v. Industrial Comm'n* (1976), 65 Ill. 2d 234, 357 N.E.2d 541); where the injuries occurred in public areas providing the only practical means of access to the employer's premises (*Bommarito v. Industrial Comm'n* (1980), 82 Ill. 2d 191, 412 N.E.2d 548; *Gray Hill, Inc. v. Industrial Comm'n* (1986), 145 Ill. App. 3d 371, 495 N.E.2d 1030); and where the injury occurred on a road maintained by the employer for its employees (*Oscar Mayer Foods Corp. v. Industrial Comm'n* (1986), 146 Ill. App. 3d 315, 496 N.E.2d 515).

■ In the instant case, the petitioner was not engaged in a work-related activity when she injured her knee. Rather, she testified that she had finished her daily work and was simply leaving the mall. Further, she was a considerable distance from her employer's immediate premises, having left the store, traveled down an escalator to another

level and walked to within 12 feet of a mall exit. Finally, she had 10 or more routes to choose from in leaving work. These circumstances indicate that her injury was not compensable under the Act.

The petitioner argues, however, that because the respondent was required under the lease to pay a share of the common areas' maintenance costs, it had the right and duty to ensure that those areas were safe for its employees. Further, contends the petitioner, the interior corridors of the mall were not akin to public streets and sidewalks because they were closed to the public approximately one hour after the stores closed. Unlike public thoroughfares, the corridors were intended only to serve the business functions of funneling customers to the stores and providing employees access to their places of employment.

In support of her position, the petitioner cites *Master Leakfinding Co. v. Industrial Comm'n* (1977), 67 Ill. 2d 517, 367 N.E.2d 1308, where the court held that an employee injured either on steps leading from a building in which his employer was a subtenant or in a parking lot beside the building was covered by the Act. Similarly, the petitioner notes that in *Chicago Transit Authority v. Industrial Comm'n* (1986), 141 Ill. App. 3d 868, 491 N.E.2d 27, we awarded compensation to an employee injured in an elevator of the building where his employer was a tenant.

In *Master Leakfinding*, both the scope of the employer's subtenancy and the site of the injury were unclear. The court made alternative findings, including that the Commission could properly have concluded that the injury occurred in a parking lot which was provided by the employer for its employees. Given the ambiguities in *Master Leakfinding*, we do not find it of value in deciding the instant case.

The physical location in *Chicago Transit Authority (CTA)* resembles that in the instant case. There, the employer rented space in Chicago's Merchandise Mart, a large building with many tenants. However, in *CTA* the facts surrounding the employee's accident were quite different. The *CTA* employee was injured while riding an elevator from his seventh-floor office to the ground floor. During the descent, the elevator's cable snapped, allowing it to fall several floors into the subbasement. At the time, the employee had signed out for his lunch break, but testified that he also intended to use the time to buy calculator batteries and pencil leads needed to perform his job as an auditor. Further, the employee was sometimes required to leave his office to perform work duties. It was also against departmental policy to eat in the office. Under those facts, the Commission could properly have found that the employee was engaged in a work-related activity when

he was injured. Additionally, the *CTA* employee had only a limited means of ingress and egress to his place of employment, being forced to use the elevators to reach his office.

In the instant case, the petitioner's injury occurred when she had completed her workday. She admitted that she was simply leaving the mall when she fell. Clearly, the vast public concourses of a shopping mall are quite different from the limited confines of an elevator, allowing the petitioner to choose among numerous alternate routes in exiting the building. Additionally, the instant petitioner admitted that she had previously noticed that her injury site was dangerously slick, that she could park anywhere in the outer lots circling the mall, and that she had often used different routes upon exiting her employer's premises.

Given the distinct facts of the instant case, we find as a matter of law that the petitioner's injury did not arise out of and in the course of her employment. (*Butler Manufacturing Co. v. Industrial Comm'n* (1981), 85 Ill. 2d 213, 422 N.E.2d 625.) Accordingly, we reverse the circuit court's confirmation of the Commission's decision and vacate all awards of compensation under the Act. Our decision renders moot the remaining issues raised on appeal and cross-appeal.

The decision of the circuit court of Cook County is reversed.

Reversed.

McNAMARA, WOODWARD, McCULLOUGH, and CALVO, JJ., concur.