GLORIA PHILLIPS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (C.F. Braun Constructors, Inc., Appellee).

Third District (Industrial Commission Division)   No. 3—89—0028WC

Opinion filed August 25, 1989.

Marc A. Perper and Mitchell W. Horwitz, both of Horwitz, Horwitz & Associates, Inc., of Chicago, for appellant.

Michael Gahan, of Rooks, Pitts & Poust, of Joliet, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Claimant, Gloria Phillips, sought worker's compensation benefits for an ankle and leg injury allegedly suffered as a result of an accident which occurred while she worked for respondent, C.F. Braun Contractors, Inc. An arbitrator denied benefits after finding that claimant failed to prove a causal relationship between the accident and her present condition of ill-being. The Industrial Commission (Commission), with one member dissenting, affirmed that decision. The circuit court of Will County confirmed the Commission's decision. Claimant appeals, contending that the Commission's decision is against the manifest weight of the evidence.

Claimant worked as a secretary for respondent. On June 26, 1985, she was walking down a step at work when her left ankle and knee twisted inward. She experienced pain and notified her supervisor of the accident. The shooting pain in her foot and ankle radiated up into her left leg. She was treated by several physicians who diagnosed a sprained ankle and initially advised her not to work. Finally, in 1986 a physician diagnosed, and began treating for her for, a nerve injury. In June 1986, claimant attempted to return to work to fill in for another secretary. After 15 minutes seated at a desk, her left leg was very painful. She left work after four hours due to the extreme pain. She has not worked since that time. At the time of arbitration, claimant

still experienced pain on prolonged sitting and when bearing weight on her left foot. She can sit, stand and walk for only brief periods before experiencing a sharp, burning pain radiating up her left leg. She walks with a limp, and her left leg is weak.

Dr. Dwight Woiteshek, an orthopedic surgeon, examined claimant on July 1, 1985. He observed that she walked with a limp and complained of pain in her left foot, ankle and leg. The foot was swollen and discolored. He diagnosed a sprained ankle and prescribed a short leg walking cast from July 1 to July 23, 1985. She continued to experience pain and noted little improvement in her condition. A bone scan of the left foot was normal. On August 14, 1985, he released claimant to return to work.

Dr. Alvin Kanter, an orthopedic surgeon, examined claimant on September 17, 1985. Claimant walked with a limp and experienced pain radiating from the left foot up through her leg. He diagnosed an inversion injury to the left ankle, treated it with rest and pain medication, and released claimant for work on November 7, 1985. On November 26, 1985, Dr. Kanter again saw claimant. She had the same complaints of leg pain. He advised her to apply heat and seek a job. On February 27, 1986, claimant reported continued radiating pain, and Dr. Kanter diagnosed a residual sprain of the left ankle with some residual symptomatology and discharged her from his case.

Dr. Douglas Anderson, a neurosurgeon at Loyola, examined claimant on November 26, 1986. Dr. Anderson diagnosed L5 radiculopathy, dystrophic in nature, potentially relative reflex sympathetic dystrophy or traumatic radiculitis. The myelogram and CT scan were normal. The final diagnosis was traumatic radiculopathy. Following conservative treatment, Dr. Anderson suggested surgery to implant a spinal epidural stimulator to treat the intractable pain syndrome, but claimant declined this option.

Dr. Anderson testified at a deposition that in his opinion the present condition of ill-being was caused by the June 26, 1985, work accident. At the time claimant twisted her left ankle and leg, she suffered a stretch injury of the peripheral nerves associated with the L5 dermatone and myotome in the lower left leg. Claimant had been disabled from the time of the accident on June 26, 1985, and was still unable to return to her duties. Dr. Anderson had not released her to return to work. He was not very optimistic and described her prognosis as "guarded."

Dr. Steven Mash examined claimant on April 9, 1986, at respondent's request. Dr. Mash diagnosed a post–strain-sprained left foot. Carolyn Good and Robin Plese testified for claimant that they heard

Dr. Mash refer claimant to Loyola Medical Center for treatment of a "serious problem." Dr. Mash could not recall making the referral, but he did note that she was in need of further evaluation. Dr. Mash was not asked to express an opinion about causation. He agreed that twisting or stretching the ankle or foot could result in a leg injury, and that there was a "reasonable possibility" that claimant sustained such an injury. Dr. Mash did not examine claimant's leg and restricted his examination to her foot and ankle.

On April 14, 1987, the arbitrator concluded that claimant failed to prove a causal connection and denied any compensation. On July 7, 1987, the Commission, with one member dissenting, adopted the findings of the arbitrator, merely commenting that they were supported by evidence in the record.

The trial court found that the Commission's decision was not contrary to the manifest weight of the evidence and confirmed that decision.

Claimant contends that the Commission's finding of no causal connection is against the manifest weight of the evidence. We agree.

Claimant bears the burden of proving that the injury was causally related to her employment. (*Newgard v. Industrial Comm'n* (1974), 58 Ill. 2d 164, 317 N.E.2d 524.) The Commission's findings of fact will not be disturbed unless contrary to the manifest weight of the evidence. (*Deal v. Industrial Comm'n* (1976), 65 Ill. 2d 234, 357 N.E.2d 541.) However, where factual matters are susceptible of only one inference, it becomes a question of law, and this court is not bound by the Commission's decision. (*Butler Manufacturing Co. v. Industrial Comm'n* (1981), 85 Ill. 2d 213, 422 N.E.2d 625.) Where claimant proves causation with unrebutted expert medical testimony which sufficiently supports a finding of causal connection, a reviewing court may set aside the Commission's decision finding no causation. *Dean v. Industrial Comm'n* (1986), 143 Ill. App. 3d 339, 493 N.E.2d 16, cited in *Busaytis v. Industrial Comm'n* (1989), 178 Ill. App. 3d 943, 533 N.E.2d 1178.

A chain of events which establishes a prior condition of good health, an accident, and a subsequent condition of ill-being resulting in disability may be sufficient to prove a causal connection between the accident and the employee's injury. *International Harvester v. Industrial Comm'n* (1982), 93 Ill. 2d 59, 442 N.E.2d 908.

Dr. Anderson offered the only direct opinion on causal connection. He opined that claimant's present condition of ill-being was caused by the work accident. He reviewed the early medical records, which included consistent complaints of pain in the left foot, ankle and

leg. He concluded that when claimant twisted her left ankle and leg at work, she sustained a stretch injury of the peripheral nerves associated with the L5 dermatome and myotome in that leg. Dr. Anderson explained that nerve stretch injuries are commonly associated with radiculopathy and are well known to be associated with distal and far-reaching pain syndromes. Dr. Anderson based his decision on the nature and mechanism of the injury, the fact that the injury involved inversion of the left foot and leg; the onset, character and persistence of the pain as documented by the medical records; the lack of response to treatment and medication; the positive neurological findings; the EMG report and results; and the absence of any other nerve root compression in the spine, as shown by the normal myelogram and CT scan. The records of Drs. Kanter and Woiteshek contained complaints consistent with Dr. Anderson's diagnosis. Thus, Dr. Anderson found claimant's complaints could be taken "as evidence of a process that was less focal than ankle sprain and associated indeed with a traumatic nerve injury, stretch injury of the nerve that could involve the radical of the L5 nerve root." Dr. Anderson opined that claimant has been disabled and unable to perform her job duties since the accident of June 26, 1985. She was currently unable to return to work. He had no opinion as to the permanency of her condition and found her prognosis was guarded.

Respondent offered no direct evidence rebutting claimant's causal connection. The medical records of Drs. Woiteshek and Kanter show that claimant complained of pain in her left foot, ankle and leg. Drs. Woiteshek and Kanter offered no opinion regarding claimant's leg, because they examined and X-rayed only her foot. Respondent relies on the fact that those doctors simply diagnosed a sprained ankle. A claimant should not be punished, however, because the initial treating physicians failed to correctly diagnose her condition.

Respondent offered the testimony of Dr. Mash. However, respondent failed to ask Dr. Mash whether or not he agreed with Dr. Anderson's diagnosis and failed to ask his opinion regarding causation. On cross-examination, Dr. Mash agreed that a peripheral nerve injury can occur by twisting or stretching the ankle or foot. It was a "reasonable possibility" that claimant had sustained such an injury. Moreover, he admitted not performing tests above the left ankle and not examining the left leg at all. In addition, Dr. Mash deferred to Dr. Anderson's opinion as to whether or not claimant was presently able to work.

The Commission expressly based its decision on the findings of the arbitrator. Those findings contain several significant factual errors. The arbitrator limits the injury "to [the] left foot," while the medical

records clearly include her repeated complaints of leg pain.

The arbitrator asserted that there was "conflicting medical testimony," despite the fact that there was no conflict as to causal connection.

The arbitrator relied upon the evidence deposition of Dr. Woiteshek. Dr. Woiteshek never testified.

The arbitrator reported that Dr. Woiteshek released claimant for work after seeing her on April 9, 1986. This is eight months *after* claimant's final visit to Dr. Woiteshek on August 14, 1985.

The arbitrator apparently discounted or ignored Dr. Anderson's final opinion and diagnosis. The arbitrator cited only Dr. Anderson's preliminary diagnosis, mentioned at the beginning of his deposition. The arbitrator ignored Dr. Anderson's final diagnosis, made after the diagnostic tests were performed, or traumatic radiculopathy caused by a stretching injury to the peripheral nerves in the left leg.

The arbitrator also relied upon the fact that the CT scan and myelogram were normal. Dr. Anderson, however, testified that normal findings were consistent with his diagnosis of a stretching peripheral nerve injury.

The arbitrator also relied on the fact that Dr. Kanter reported "nothing about any back injury or back symptoms." This case has nothing to do with a back injury. The myelogram and CT scan simply ruled out low back pathology as a cause of claimant's leg pain.

The arbitrator denied temporary total disability, even for the period during which Dr. Kanter advised her not to work and her left leg was in a cast.

We conclude that the Commission's determination that claimant failed to prove a causal connection between her work injury and her present condition was erroneous as a matter of law. See *Busaytis v. Industrial Comm'n* (1989), 178 Ill. App. 3d 943, 533 N.E.2d 1178.

Without discussion, we reject as being without merit claimant's contention that she is entitled to penalties under sections 19(k), 19(l) and 16 of the Act.

The judgment of the circuit court of Will County confirming the Commission's determination that claimant's condition was not caused by her work injury is reversed. The cause is remanded for further proceedings consistent with the holdings contained herein.

Judgment reversed and remanded.

BARRY, P.J., and WOODWARD, McCULLOUGH, and LEWIS, JJ., concur.